*cv. som*

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

is JUN 17 2013

at ___ o'clock and __16__ min P.M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRIAN EVANS

General Delivery

Keaau, Hawaii 96749

(617) 599-5040

riveravenue@hotmail.com

    Plaintiff, Pro Se

                                CIVIL NO. 13-00267-SOM-BMK

vs.

Cerberus Capital Management, L.P.

875 Third Avenue

New York, NY 10022,

           DEFENDANT                <u>FIRST AMENDED COMPLAINT</u>

Steward Health Care System

500 Boylston Street

Boston, Massachusetts   02116,

           DEFENDANT

Ralph De La Torre, in his individual and Official Capacity as CEO of Steward Health Care System,

500 Boylston Street

Boston, Massachusetts,

           DEFENDANT,

The Holy Family Hospital

70 East Street

Methuen, Massachusetts, 01844,

                DEFENDANT

Dr. Ronald Marvin, Individually and in his official capacity as an employee of Steward Health Care System

29 Stiles Road, Suite 102

Salem, NH 03079,

                DEFENDANT

Dr. Sharda Kaul, Individually and in her official capacity as an employee of Steward Health Care System

421 Merrimack Street

Suite 101a

Methuen, Massachusetts,

                DEFENDANT

Dr. Anthony Straceski, Individually and in his official capacity as an employee of Steward Health Care System

60 East Street, Suite 2100

Methuen, Massachusetts    49002,

                DEFENDANT

STRYKER

2825 Airview Boulevard

Kalamazoo, Michigan    49002,    DEFENDANT

STRYKER ORTHOPEDICS

Location: 325 Corporate Dr.

Mahwah, NJ 07430,

                DEFENDANT,

**DOES 1-10,**

**DEFENDANT**

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY RESULTING IN DEATH, WRONGFUL DEATH, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, LOSS OF LOVE**

Plaintiff, Brian Evans (in Pro Se), files this First Amended Complaint against all named Defendants above for Personal injury resulting in death, Wrongful Death, Intentional Infliction of Emotional Distress, Loss of Consortium, and Loss of Love.

**PARTIES**

Brian Evans, a Resident and Citizen of Hawaii

Cerberus Capital Management, A Private Equity Firm located in New York, New York

Steward Health Care System Management, L.P., of Boston, Massachusetts, an LLC owned by Cerberus Capital Management

The Holy Family Hospital, a hospital located in Methuen, Massachusetts, owned by Steward Health Care System

Dr. Ronald Marvin, a doctor employed by Steward Health Care System in Boston, Mass. and a resident of Massachusetts.

Dr. Sharda Kaul, a doctor employed by Steward Health Care System in Boston, Mass. and a resident of Massachusetts.

Dr. Anthony Straceski, a doctor employed by Steward Health Care System in Boston, Mass. and a resident of Massachusetts.

STRYKER, A Corporation located in Kalamazoo, Michigan

Stryker Orthopedics, A Corporation located in Mahwah, New Jersey

**JURISDICTION**

This Honorable Court has subject jurisdiction over this matter under Diversity, 28 USC 1332 as the matter is between parties from different states and exceeds $75,000 in claim.

Venue is proper given Plaintiff is the only son of the victim in this case, now the administrator of her Estate, but for the purposes of this Complaint is acting individually and in the capacity as her son, as he is also alleging Intentional Infliction of Emotional Distress, which is being suffered by Plaintiff here in Hawaii, where he resides and is a citizen. Elements of this Emotional Distress as it relates to this matter occurred only within the past two months after numerous grief therapy sessions revealed itself.

Plaintiff is a resident and full time citizen of the state of Hawaii, and maintains Hawaii state ID (**Exhibit A**).

The United States Supreme Court determined in Erie Railroad Co. v. Tompkins (1938) that the law applied in a diversity case would be the law of whatever state in which the action was filed.

In LeBlanc v. Cleveland, 248 F.3d 95 (2nd Cir. 1999), it is stated that Diversity is determined at the time that the action is filed, and on the basis of the residency of the parties at that time. A change in domicile by a party before or after that date is irrelevant, if Plaintiff's residency is in question. Plaintiff is a resident of Hawaii and maintains Hawaii state identification and physical residents and intends to reside her for the remainder of his life. Plaintiff provides a current valid Hawaii state ID (address is currently in

the process of being changed due to a move to the Big Island of Hawaii) **(Exhibit A)**.

Under article III of the Constitution, federal courts can hear "all cases in law and equity arising under this Constitution and laws of the United States."

Plaintiff has in the past worked as a concert producer in this State, and was once a candidate for the US Senate in Hawaii. Plaintiff's entire life has been based in Hawaii for more than a decade, leaving only for occasional employment.

In addition, Co-Defendants Cerberus Capital Management and Stryker have numerous contacts with the State of Hawaii. (**Exhibit B are exhibits confirming Cerberus contacts, Exhibit C are exhibits confirming Stryker contacts)**. Stryker products are utilized in every hospital that performs surgeries in Hawaii, and Cerberus Capital Management owns numerous businesses, telcoms, and hotels in this state, as well as Freedom Group, the gun manufacturing company (the same company that made the gun used in the Newtown shootings), as well as the hospital Plaintiff's mother died in (they make the guns, then treat the wounds).

Co-Defendant Cerberus Capital Management has numerous contacts with the state of Hawaii), and also owns Steward Health Care System. Steward Health Care System, owned by Cerberus Capital Management, owns Steward Health Care System, and in turn The Holy Family Hospital, employs and/or contracts all doctors named in this Complaint, and contracts with Stryker to supply the very knee replacement Plaintiff's mother received. Cerberus Capital Management, simply put, has its hands in everything, everywhere, and earns hundreds of millions of dollars through its businesses in Hawaii. Cerberus Capital Management, a private equity firm, owns every Defendant, or employs every Defendant, through their company, Steward Health Care System and their ownership in Hawaii businesses are literally littered throughout the state, as displayed in Exhibit C. In fact, there are more than 789,000 Hawaii search results on Google alone when entering "Cerberus" and "Hawaii." Their

contacts with Hawaii are so numerous that this Complaint would literally be thousands of pages if Plaintiff were to attach every confirmation of Cerberus Capital Managements connections with this state, from telecom's to hotels. Cerberus Capital Management frankly owns more of Hawaii than Hawaiian's.

**FACTUAL ALLEGATIONS**

Plaintiff, Brian Evans (in Pro Se), files this Complaint against the Defendants for negligently treating his mother to the point where she died, as well as other causes of actions as stated in this Complaint. Co-Defendants who prescribed Plaintiff's mother the very CPAP (sleep apnea machine) for home use, failed to offer or provide a CPAP following her surgery, and as a result, she went into cardiac arrest. Plaintiff's mothers death certificate lists Sleep Apnea as a cause of death. Following a routine knee surgery, they dosed Helen Marie Bousquet out on morphine (known to slow the respiratory system in itself), put her in an unmonitored recovery room, offered no sleep apnea device that the doctors who cleared her for this surgery prescribed to her for home use (but not post-surgery recovery use), and she died. The American Sleep Apnea Association, upon review of information regarding Helen Bousquet's death, fully supports Plaintiff (**Exhibit D**). The American Sleep Apnea Association is the only national organization that deals with the condition known as Sleep Apnea. Massachusetts state senator and Minority Leader Bruce Tarr is now proposing new legislation as a result of Helen Bousquet's passing.

**PRELIMINARY STATEMENT**

1. In August, 2012, Plaintiff's mother, Helen Marie Bousquet, decided to go to The Holy Family Hospital, a Steward Health Care System hospital. Knowing she had Sleep Apnea, she was cleared for the routine knee surgery by her doctors.

2. On October 5th, 2012, Plaintiff's mother (Plaintiff is her only son) died following a routine knee

operation when the hospital placed her in an unmonitored recovery room, dosed her out on morphine, and left her there to die despite knowing before she even walked into the hospital that she had a condition known as Sleep Apnea. There was no heart monitor, no mechanical device to monitor or alert anyone in the hospital that she was having any issues in the room whatsoever, absolutely nothing but a room and a bed, and a clicker to "call a nurse," that Plaintiff was told by his mother they were "ignoring," when she did click for help during a telephone call Plaintiff had with his mother following the surgery. Her surgeon, Dr. Ronald Marvin, who also knew she had sleep apnea prior to performing this surgery on her, had no post recovery plan in place knowing she would be given morphine for the knee surgery to deal with the pain.

3. Approximately two weeks later, nurses for the hospital protested the hospital for lack of staffing to care for its patients. Over 1,000 nurse complaints have been filed with its parent company for lack of staffing and unsafe staffing conditions in the past one year in just one of Steward Health Care Systems hospitals (**Exhibit E**).

4. In an effort to bring awareness to what happened to his mother, Plaintiff went public with what happened. Her death has caused national outrage, outrage by The American Sleep Apnea Association (only Helen Bousquet is listed on their own home page as a link honoring her for the attention she has brought to this condition), and such luminaries as Oscar winning actor Tom Hanks have assisted Plaintiff in obtaining attention to what happened to Helen Marie Bousquet. US Secretary of State John Kerry initiated an investigation with the Board of Medicine in Massachusetts, and The Massachusetts State Senate is working on proposing new legislation as a direct result of what happened to Helen Bousquet.

The American Sleep Apnea said it best in their unprecedented letter to Plaintiff.

"Helen Bousquet did not have to die." The Defendants are at fault, and as noted in a separate lawsuit within this Court, such a lawsuit as this was not going to survive in Massachusetts given the numerous

connections this hospital, Steward Health Care System, and Cerberus Capital Management have, and the money that flows from these organizations to the officials in that state. This is a national public safety matter, especially when Cerberus Capital Management now has set its sights on buying up everything in Hawaii that they can.

### **FIRST CLAIM**

### **(PERSONAL INJURY RESULTING IN DEATH)**

Defendants all ignored co-Defendant Stryker's own warnings that overweight patients may not be candidates for this knee replacement surgery (**Exhibit F**). Plaintiff's mother was 55 pounds overweight at just 5'2. However Stryker has no policy in place to review the records of potential patients prior to shipping off their product to then be implanted into patients. In fact, Stryker only showed interest in reviewing the records of Helen Bousquet after she died, not before. Common sense would dictate that before you send an implant to be shipped off to a patient, you'd want to know the medical history of those who are being implanted with your product, especially if you already know, and have actually posted on your own website, that overweight patients shouldn't be implanted with the devices. Co-Defendants were only interested in seeing her medical records after she died.

Defendants, knowing Plaintiff's mother had a condition known as Sleep Apnea, offered her no CPAP, and just put her in an unmonitored recovery room, dosed her out on morphine, and left her alone in the room. When Plaintiff asked "Why didn't she have a CPAP?," the nurse replied, "We don't give out CPAP's until 9:00 PM when patients go to bed." Plaintiff replied, "What time is bedtime when you are dosed out on morphine!"

There was no heart monitor, and no monitor of any kind in Plaintiff's mother's hospital recovery room, despite their full knowledge that she had sleep apnea before she even walked through the front doors

of the hospital. In fact, it was co-defendant Anthony Straceski and co-defendant Sharda Kaul who cleared her for the surgery, who also prescribed the CPAP for Mrs. Bousquet's home use a year before this surgery, and all Defendants failed to have any post recovery plan in place for a woman who had sleep apnea and who was dosed out on morphine following a routine knee operation. Steward Health Care System CEO, despite his public acknowledgement of earning over $2 million per year as Steward's CEO, failed to make certain the hospitals he oversees had proper monitoring of at risk patients like my mother was. That was his responsibility, and he failed my mother along with the rest of these Defendants.

**SECOND CLAIM**

(WRONGFUL DEATH)

Had the Defendants properly supervised, had a post-recovery care plan in place, and responded to my mother's needs, she would not be deceased. The Defendants complete ignorance and negligence caused her death. You simply don't put a sleep apnea patient, dosed out on morphine, in an unmonitored recovery room following surgery, and deny her a CPAP (a sleep apnea machine), especially when it is clearly in every medical record, that every defendant had prior to this surgery, that she has Sleep Apnea. I know this, and I'm not even a doctor.

Defendants all ignored co-Defendant Strykers own warnings that overweight patients may not be candidates for this knee replacement surgery (Exhibit F). Plaintiff's mother was 55 pounds overweight at just 5'2. However Stryker has no policy in place to review the records of potential patients prior to shipping off their product to then be implanted into patients. In fact, Stryker only showed interest in reviewing the records of Helen Bousquet after she died, not before. Common sense would dictate that before you send an implant to be shipped off to a patient, you'd want to know the medical history of those who are being implanted with your product, especially if you already know, and have actually

posted on your own website, that overweight patients shouldn't be implanted with the devices.

Defendants, knowing Plaintiff's mother had a condition known as Sleep Apnea, offered her no CPAP, and just put her in an unmonitored recovery room, dosed her out on morphine, and left her alone in the room. When Plaintiff asked "Why didn't she have a CPAP?," the nurse replied, "We don't give out CPAP's until 9:00 PM when patients go to bed." Plaintiff replied, "What time is bedtime when you are dosed out on morphine!"

There was no heart monitor, and no monitor of any kind in Plaintiff's mother's hospital recovery room, despite their full knowledge that she had sleep apnea before she even walked through the front doors of the hospital. In fact, it was co-defendant Anthony Straceski and co-defendant Sharda Kaul who cleared her for the surgery, who also prescribed the CPAP for Mrs. Bousquet's home use a year before this surgery, and all Defendants failed to have any post recovery plan in place for a woman who had sleep apnea and who was dosed out on morphine following a routine knee operation.

Due to the treatment Helen Bousquet received, she died, and at the hands of the Defendants named in this Complaint.

**THIRD CLAIM**

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, LOSS OF LOVE)**

Plaintiff, Brian Evans, has suffered a loss that cannot be adequately described to this court. Helen Bousquet was not part of his family, she was his entire family. At 62, she went into that hospital to feel better, not to die. Helen Bousquet was not some random "Well, it can happen" case. She was left alone, knowing she had sleep apnea before she walked through the door, in that recovery room, her leg strapped up from the knee surgery so that she couldn't get out of bed, or even crawl to the floor, to seek assistance as she likely was choking to death. She was essentially chained to the bed with a clicker

she earlier complained nurses didn't respond to. In the ICU, nurses were joking around with each other about "some guy" as Plaintiff's mother lay dying as if she wasn't even in the room.

Plaintiff has been in grief therapy two to three times a week since this happened. Plaintiff has almost killed himself over it. One week Plaintiff's mother is filming a music video with him, the next Plaintiff's mother is headed to a crematory because of these Defendants, who as their own nurses attest in Exhibit E, put money over profit care. It's only a matter of time until Cerberus begins buying up the hospitals in Hawaii, like every other company they currently own here. An $80 heart monitor would have possibly saved her life, she had the best insurance money could buy. There was simply more money in the ICU than there was is her walking out the door, and this disgusting but possible belief is why ~~Mark~~ Mike Lawrence, special agent for the FBI in Boston, is now investigating Steward Health Care System as a direct result of what happened to Plaintiff's mother, and the court can confirm this with the FBI should it so desire.

## CONCLUSION

Helen Marie Bousquet died at 62 because of the conduct of the Defendants. Plaintiff is bringing this action to this court in Pro Se, and prays this court will grant him the latitude of a Pro Se litigant as he continues to search for an attorney to represent him in Hawaii, which has been a very difficult thing to do given the connections Cerberus Capital Management has with this state. It has been a process that is easier said than done. However, Helen Marie Bousquet is my mother, and I am her son, and no son should sit idle and allow this to occur without seeing to it that she receives her day in court, and the influence of a multi-billion dollar private equity firm, in Massachusetts or anywhere else, should not deprive her of that justice simply because Plaintiff doesn't have the same financial resources as the Defendants. Plaintiff is doing what any son should, and that is to stick up for his mother above all else, no matter what. That is what you do if you love your mother, and when someone does something to her, as these Defendants have. Plaintiff's mother died, and there is nothing frivolous about her obtaining

justice, or the Plaintiff, in this filing. It's about as opposite of frivolous as will ever be before this court.

**RELIEF**

Plaintiff files suit seeking $50 million, and damages as allowed by law, to be distributed to causes and charities his mother would have wanted.

BRIAN EVANS

June 13th, 2013